FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 25, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JASON RAYMOND S., | |
| Plaintiff, | No. 4:18-CV-05078-RHW |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 12 & 13. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision, which denied his application for Disability Insurance Benefits under Title II of the Social Security Act. 42 U.S.C §§ 401-434. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

# I.   Jurisdiction

Plaintiff filed his application for Disability Insurance Benefits on April 7, 2014. AR 183-189. His alleged onset date of disability is March 22, 2013. AR 183. Plaintiff's applications were initially denied on August 28, 2014, AR 103-117, 133-35, and on reconsideration on November 21, 2014, AR 118-132, 137-38.

A hearing with Administrative Law Judge ("ALJ") Glenn G. Meyers occurred on September 28, 2016. AR 55-102. On December 1, 2016, the ALJ issued a decision finding Plaintiff ineligible for disability benefits. AR 35-54. On March 16, 2018, the Appeals Council denied Plaintiff's request for review, thus making the ALJ's ruling the final decision of the Commissioner. AR 1-4.

On May 17, 2018, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 3. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

# II.   Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant

is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571, 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the claimant does not have a severe impairment, or combination of

impairments, the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159. In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision.

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 33 years old on the alleged date of onset. AR 59. He has a high school education and is able to communicate in English. AR 200, 202. Plaintiff has past work as a truck body builder, a short order clerk, a concrete pipe maker, a bartender helper, a bartender, and a fast food service manager. AR 48, 210, 236-247.

### V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from March 22, 2013 (the alleged onset date) through June 30, 2015 (the date last insured). AR 50.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date, March 22, 2013, through his date last insured, June 30, 2015 (citing 20 C.F.R. § 404.1571 *et seq.*). AR 40.

**At step two**, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, sacroiliac joint dysfunction, myofascial pain syndrome, affective disorder (depressive and/or bipolar disorder), and anxiety disorder (citing 20 C.F.R. § 404.1520(c)). AR 40.

At **step three**, the ALJ found that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 41.

**At step four**, the ALJ found that through the date last insured, Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except: he needed to shift position while seated at work; he needed to change from sitting to standing for brief periods without leaving the workstation; he could not climb ladders, ropes, or scaffolding; he could occasionally stoop, squat, crouch, crawl, kneel, and climb ropes and stairs; he could have no public contact; he was capable of working in proximity with co-workers, but not in coordination with them; he could have occasional contact with supervisors; he would be absent from work up to six times per year, and off-task up to ten percent of his work shifts while still meeting minimum production requirements. AR 42. The ALJ further found that Plaintiff was capable of engaging in unskilled, repetitive, routine tasks in two-hour increments. AR 42.

The ALJ further found that through the date last insured, Plaintiff was unable to perform any past relevant work, given his physical and psychological limitations. AR 48.

**At step five**, the ALJ found that in light of the Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed through the date last insured. AR 49. These included housekeeper cleaner, packing line worker, and hand packager. AR 49.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. ECF No. 12 at 11. Specifically, he argues the ALJ erred by: (1) improperly evaluating the medical opinion evidence; (2) improperly discrediting Plaintiff's subjective pain complaint testimony; and (3) improperly relying on testimony from the vocational expert in response to an incomplete hypothetical. *Id.* at 10.

## VII.   Discussion

**A.    The ALJ did not Err in Weighing the Medical Opinion Evidence**

**1.    Legal standards**

Title II's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th

Cir. 2001); *see* 20 C.F.R. § 404.1527(c)(1)-(2). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a nonexamining physician's. *Holohan*, 246 F.3d at 1202. In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over those of non-specialists. *Id.*

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

The ALJ satisfies the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal quotation marks omitted). In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or

criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

### 2.    How the ALJ determined Plaintiff's residual functional capacity

In reaching his decision, the ALJ relied heavily on two agency nonexamining psychological consultants—Dr. Janis Lewis and Dr. Andrew Forsyth—who opined that Plaintiff could work in a low-stress environment doing simple, routine tasks. AR 48, 104-117 (Dr. Lewis), 120-125 (Dr. Forsyth). The ALJ also relied heavily on nonexamining medical consultant Dr. Guillermo Rubio, who opined that Plaintiff was able to do light work. AR 48, 118-132.

However, the ALJ also incorporated limitations from examining psychologist Dr. Nora K. Marks' evaluation, as well as PT Mark Johnson's functional capacity evaluation (FCE). Plaintiff argues that by doing this, the ALJ contradicted himself because parts of Dr. Marks' and Mr. Johnson's opinions were inconsistent with parts of the nonexamining consultants' opinions. ECF No. 12 at 14-15. But the reason the ALJ did this was to make Plaintiff's residual functional capacity a more holistic reflection of his overall abilities. This was not error.

### 3.    Dr. Linda L. Walby

Dr. Walby was a treating physician who Plaintiff began seeing in April 2014. AR 333. In August 2014, she opined that Plaintiff could not return to his previous heavy labor job manufacturing and welding truck beds, which required

him to lift and carry steel beams weighing 50 to 150 pounds. AR 330; *see* AR 242, 283. She endorsed Mr. Johnson's FCE, and further opined that as of August 2014, Plaintiff was limited to "less than 40 hour sedentary work tolerance." AR 331. However, she qualified this by stating, "I am certainly not saying it is permanent."[1] AR 331. She said she was "not willing to go further than 6 months from now" and recommended additional imaging after six months, which apparently never occurred. AR 331. Because Dr. Walby was a treating doctor whose opinion was contradicted by other doctors, the ALJ was required to provide specific and legitimate reasons for discounting it.[2] *Bayliss*, 427 F.3d at 1216.

The ALJ gave some weight to Dr. Walby's opinion. AR 46. The ALJ agreed that Plaintiff could not return to medium or heavy work. AR 46. However, the ALJ disagreed that Plaintiff was limited to less than 40 hours of sedentary work. *See* AR 46. The ALJ reasoned that Plaintiff's work history, treatment records, medical imaging, examination findings, and daily activities all indicated that Plaintiff was not this limited. AR 46.

---

[1] Plaintiff asserts, without citation to the record, that Dr. Walby actually opined that his condition "would only worsen over time." ECF No. 12 at 14. Dr. Walby's records do not appear to contain such an opinion. *See* AR 328-345.

[2] Relying on *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008), the Commissioner argues that, because Dr. Walby put temporal limitations on her opinion, her opinion on disability was not probative and therefore should be rejected as a matter of law. But this was not the grounds the ALJ relied on for rejecting Dr. Walby's opinion. *See* AR 46. Moreover, in *Carmickle*, the doctor excused the claimant from work for two weeks, released him to full duty after two months, and the court of appeals simply upheld the ALJ's finding that this deserved little weight in evaluating the claimant's long-term functioning. *Id.* at 1165. The *Carmickle* court did not hold that temporary work limitations can never be probative evidence as a matter of law.

These were specific and legitimate reasons for discounting this portion of Dr. Walby's opinion.[3] *Id*. Although the ALJ agreed Plaintiff could not return to the heavy labor job that he had in the early 2000s, Plaintiff worked at Jack Didley's Bar & Grill in 2012, where he cleaned, bartended, and stocked kegs and bottles that weighed between 30 to 50 pounds. AR 282. He quit this job because he "got pissed off" about having to work on holidays. AR 348. From July 2012 to April 2014, Plaintiff worked at his wife's metal fabrication business doing "small knick-knack repair," AR 72-73, which was well after his alleged disability onset date and was also around the time he began going to Dr. Walby. He told Dr. Marks that after a couple of years in business, "he could not keep it open." AR 348. He also told Dr. Marks that he had been filling out job applications but that his living location made him a "less than desirable employee," as employers believed "he may not be able to make it to work." AR 348. This all indicates that he could perform more than just sedentary work.

Plaintiff repeatedly argues that his recent work history is irrelevant, given the ALJ's finding that he is unable to perform any past relevant work. *See* ECF No. 12 at 12, 18. However, the ALJ found that Plaintiff was only prevented from performing medium and heavy work due to his *physical* impairments. AR 46. The

---

[3] Plaintiff argues that the ALJ "did not provide a single example of Dr. Walby's opinion that was inconsistent with the record." ECF No. 12 at 14. However, the ALJ had just discussed in immense detail all the ways in which the medical evidence demonstrated that Plaintiff could perform light work. *See* AR 43-46. This prior discussion was clearly incorporated into the ALJ's discussion of Dr. Walby.

reason he could not perform past light work—such as bartending or managing a restaurant—was because of his psychological issues, which were not part of Dr. Walby's opined limitations. *See* AR 48, 331.

The ALJ also found that Plaintiff's treatment records indicated that he was not limited to less than 40 hours of sedentary work. AR 46. When Plaintiff first began physical therapy in May 2013, he denied taking any medication for back pain other than an occasional ibuprofen. AR 299. Around this time, he would "be laid up for a day or [two]" following physical activity. AR 299. Several weeks later however, his pain tolerance was increased and he was able to complete all exercises. AR 305-06. Over the next few months, he showed better control with his exercises and felt like he had gotten much stronger. AR 311. When he finished physical therapy after 11 visits, he showed good gains in strength and reported improved function and decreased pain. AR 314.

The ALJ also found that Plaintiff's medical imaging and examination findings indicated that he was not limited to less than 40 hours of sedentary work. AR 46. A June 2013 computerized tomography (CT) scan of Plaintiff's lumbar spine was normal except for a slight disc protrusion at L5-S1, with no evidence of spinal stenosis or nerve root impingement. AR 339. He consistently had negative

straight leg raise tests.[4] AR 300, 336, 489. During his FCE with Mr. Johnson, he had normal trunk flexion, normal trunk rotation, and normal trunk muscle strength, although he did have limitations with repetitively lifting medium to heavy weight, prolonged static positioning, and walking long distances. AR 369, 374. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Finally, the ALJ found that Plaintiff's daily activities indicated that he was not limited to less than 40 hours of sedentary work. AR 46. Plaintiff worked at his wife's metal fabrication business for over a year after his alleged onset date, and only quit working when they could no longer keep the business open. *See* AR 72, 348. After the business closed, Plaintiff was a stay-at-home parent for three children, ages six, eight, and ten. AR 62, 348. He reported that he managed the laundry, housekeeping, shopping, and cooking. AR 348. These daily activities demonstrate activity level beyond what Dr. Walby's opined limitations suggest. An ALJ may properly reject a treating doctor's opinion that provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins*, 261 F.3d at 856.

Because the ALJ offered specific and legitimate reasons for partially discounting Dr. Walby's opinion, the Court finds the ALJ did not err.

---

[4] The straight leg raise is a test done during a physical examination to determine whether a patient with low back pain has an underlying herniated disc, often located at L5.

### 4. Dr. Nora K. Marks

Dr. Marks is an examining psychologist who evaluated Plaintiff in August 2014. AR 346. Dr. Marks diagnosed Plaintiff with a very low level of depression and Post-Traumatic Stress Disorder. AR 348, 350. She opined that Plaintiff presented as a poor prospect for work due to his unstable and highly reactive nature. AR 350. However, she also opined that Plaintiff had learned to control some of his violent impulses, that his prognosis was fair, and that he functions well in a low-stress environment. AR 350. She recommended that Plaintiff contact the Department of Vocational Rehabilitation to assist him in job skills. AR 350.

The ALJ gave some weight to Dr. Marks' assessment. AR 47. Relying in part on her opinion, the ALJ concluded that Plaintiff was limited to unskilled, repetitive, routine tasks in an environment with no public interaction, occasional interaction with supervisors, and no collaboration with coworkers. AR 42, 47. Therefore, contrary to Plaintiff's assertions, the ALJ did not reject Dr. Marks' report. Rather, the ALJ incorporated her opinions into Plaintiff's residual functional capacity. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010).

### 5. Nonmedical "Other Source" Opinions

#### a. Lower legal standard

Importantly, the "specific and legitimate" standard analyzed above only applies to evidence from "acceptable medical sources." *Molina*, 674 F.3d at 1111. These include licensed physicians (*e.g.*, Dr. Walby), licensed psychologists (*e.g.*, Dr. Marks), and various other specialists. *See* former 20 C.F.R. §§ 404.1513(a) (2014).

"Other sources" for opinions—such as nurse practitioners, physician's assistants, therapists, teachers, social workers, chiropractors, and other nonmedical sources—are not entitled to the same deference as acceptable medical sources.[5] *Molina*, 674 F.3d at 1111; *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); *see* 20 C.F.R. § 404.1527(f). ALJs must consider nonmedical sources' lay observations about a claimant's symptoms or how an impairment affects ability to work. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ may discount a nonmedical source's opinion by providing reasons "germane" to each witness for doing so. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

---

[5] For claims filed on or after March 27, 2017, licensed nurse practitioners and physician assistants can qualify as acceptable medical sources in certain situations. *See* 20 C.F.R. § 404.1502(a)(7)-(8). Plaintiff filed his claim in 2014, so this does not apply here.

### b. Mark Johnson, P.T.

Mark Johnson is a physical therapist who performed an FCE of Plaintiff in July 2014. AR 367. Mr. Johnson opined that Plaintiff had limitations repetitively lifting and carrying medium to heavy weight, walking long distances, and with prolonged static positioning (*i.e.*, standing or sitting longer than 10 to 15 minutes). AR 369-70.

The ALJ agreed with Mr. Johnson that Plaintiff needed to be able to shift positions at work and alternate between sitting and standing. AR 46. The ALJ incorporated this limitation into Plaintiff's residual functional capacity. *See* AR 42. The ALJ otherwise gave Mr. Johnson's assessment little weight and listed multiple germane reasons for doing so. AR 46.

First, the ALJ reasoned that Mr. Johnson's opined limitations were inconsistent with his contemporaneous findings showing a generally normal physical examination, with only some reduced range of motion and minimal weakness. AR 46, 374. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason (and therefore, necessarily also a "germane" reason) for not relying on that opinion. *Bayliss*, 427 F.3d at 1216.

The ALJ also listed the same reasons that are discussed in detail above—Plaintiff's recent work history, his physical therapy records documenting improved function and decreased pain after his alleged onset date, his other examination

findings, his relatively normal CT scan, and his daily childcare activities. AR 46; *see supra* pgs. 12-14. Because these reasons meet the higher "specific and legitimate" standard for accepted medical sources, it follows that they also meet the lower "germane reasons" standard for nonmedical sources. *See Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The Court concludes the ALJ did not err by assigning little weight to Mr. Johnson's opined limitations.

### c.  Ryan Law, PA-C

Ryan Law is a physician's assistant who Plaintiff began seeing for primary care beginning in 2013. AR 358. In April 2016, Mr. Law wrote a letter to the ALJ stating that the FCE should have qualified Plaintiff for disability benefits. AR 487. Mr. Law also stated that Plaintiff's functional capacity had not improved and was not expected to. AR 487.

The ALJ gave minimal weight to Mr. Law's letter, given that it did not include any independent opinions about Plaintiff's functioning, but rather simply agreed with the FCE. AR 46. An ALJ need not accept the opinion of even a doctor if it is brief, conclusory, and inadequately supported by clinical findings. *Bayliss*, 427 F.3d at 1216. Thus, the ALJ did not err in discounting Mr. Law's opinion.

After the ALJ's opinion was issued, Mr. Law submitted a three-page letter to the Appeals Council explaining his opinion in more detail. AR 29-31. The Appeals Council stated that the evidence did not relate to the period on or before the ALJ's

decision and declined to consider it. AR 2. Plaintiff now argues that this supplemental letter establishes Mr. Law's independent opinion with respect to Plaintiff's functioning. *See* ECF No. 12 at 11, 14.

When the Appeals Council refuses to consider additional evidence, it is not made part of the evidence contained in the administrative record that is subject to this Court's substantial evidence review. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). However, even if it were, Mr. Law's supplemental letter states that the Mr. Johnson's FCE "is still a fair representation of the patient's ability to function." AR 2. Because the ALJ already assigned minimal weight to Mr. Johnson's evaluation for the reasons outlined above, Mr. Law's supplemental letter has no effect on the outcome of this case.

### d. Melissa Souza, LMHC

Melissa Souza is a licensed mental health counselor who Plaintiff began seeing in June 2015. AR 496. In August 2016, she wrote a two-page letter to the ALJ opining on Plaintiff's various impairments. AR 496-97. She opined that Plaintiff's mental conditions made him irritable and angry, highly distractible, and unable to concentrate. AR 496. She stated that as a result, Plaintiff does not pay close attention to detail and makes careless mistakes at work. AR 496. She opined that any stress causes his mental state to deteriorate quickly, and that this causes him to become so irritable that he throws things, yells, screams, and then leaves the

job site. AR 496-97. She believed Plaintiff's mental health condition is permanent. AR 497.

Ms. Souza also opined about Plaintiff's physical limitations. AR 496. She stated his back pain prevents him from working a steady job. AR 496. She described his limitations with lifting, sitting, and walking. AR 496. She believed his "physical condition is degenerative and will not improve with time." AR 498.

The ALJ gave minimal weight to Ms. Souza's statement and provided multiple germane reasons for doing so. AR 47. First, the ALJ reasoned that Ms. Souza's opinions did not appear to be based on any objective evidence but rather Plaintiff's self-reports of both his symptoms and past occupational difficulties. AR 47. An ALJ may discount even a treating physician's opinion if it is based largely on the claimant's self-reports and not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Plaintiff argues this was error, given that mental health treatment inherently involves self-reports. ECF No. 12 at 16. But as the Ninth Circuit has explained, there are objective, clinical tests in psychiatric evaluations—such as assessments and mental status evaluations—and an ALJ may give less weight to a mental health opinion when it relies "more heavily" on self-reports than on clinical observations, particularly when the ALJ finds the claimant's testimony is not credible. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Moreover, the ALJ reasoned that Ms. Souza's opinions were inconsistent with Plaintiff's other psychological treatment records. During mental health treatment in May 2014, he exhibited appropriate affect, normal mood, good grooming, normal impulse control, and intact thought process, memory, and judgment. AR 324. Later, during his psychological evaluation with Dr. Marks, he denied having serious mental health problems. AR 347. He exhibited generally calm and euthymic mood, had well-organized mental activity, and had no difficulties with thought, cognition, or concentration. AR 349. Dr. Marks opined that Plaintiff had a "very low level" of depression and "moderate" PTSD symptoms. AR 348. During his regular medical appointments from 2013 to 2015, he consistently displayed normal mood, affect, judgment, and behavior. AR 318, 320, 335, 353, 355, 358, 363, 365. In light of this inconsistent evidence, the ALJ properly rejected Ms. Souza's opinion. *See Morgan*, 169 F.3d at 600.

Finally, the ALJ rejected Ms. Souza's opinions with respect to Plaintiff's physical conditions, given that her specialty is mental health. AR 47. This was proper. *See* 20 C.F.R. § 404.1527(c)(5); *Holohan*, 246 F.3d at 1202. For these germane reasons, the ALJ did not err by assigning minimal weight to Ms. Souza's opined limitations.[6]

---

[6] The ALJ also discounted Ms. Souza's opinion due to Plaintiff's recent work history. AR 47. Given that the ALJ also found that Plaintiff could not perform some of his prior light work due to his psychological limitations, this likely was an improper reason. However, the ALJ's other germane reasons each independently support his decision to discount Ms. Souza's opinion.

**B.     The ALJ did not Improperly Reject Plaintiff's Subjective Complaints.**

Plaintiff argues the ALJ erred by discounting the credibility of his testimony regarding his subjective symptoms. ECF No. 12 at 17-19. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce the symptoms Plaintiff alleged. AR 43.

However, the ALJ determined that Plaintiff's statements of intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 43. The ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. AR 43-46.

First, the ALJ reasoned that Plaintiff's lack of ongoing employment was due to factors unrelated to his allegedly disabling impairments, AR 43, as is discussed in detail above. *See supra* pgs. 12-13. This is a sufficient basis to discredit subjective pain testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Second, the ALJ reasoned that Plaintiff's spine conditions improved after he began physical therapy shortly after his alleged onset date. AR 44; *see supra*, pgs. 13-14. An ALJ may find a claimant's subjective symptom testimony not credible based on evidence of effective responses to treatment. *See*, *e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3).

Third, the ALJ reasoned that Plaintiff's allegations of completely debilitating physical and mental limitations were inconsistent with the medical evidence and his treatment records. AR 44-45. Plaintiff testified, for instance, that he had to use a little red wagon to move things around his home and experienced incapacitating depressive episodes that could "last up to three weeks easily." AR 66, 91.

The ALJ noted that Plaintiff's testimony with respect to both his physical and psychological limitations was inconsistent with the medical evidence, AR 44-45; *see supra* pgs. 14, 21. An ALJ may discount a claimant's subjective symptom testimony when it is inconsistent with the medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Finally, the ALJ found that Plaintiff's allegations of completely disabling limitations were belied by his daily ongoing childcare activities. AR 45; *see supra* pg. 14. Activities inconsistent with the alleged symptoms—even when they suggest some difficulty functioning—are proper grounds for questioning the credibility of subjective allegations when the person claims a totally disabling impairment. *Molina*, 674 F.3d at 1113; *see also Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(3)(i).

Moreover, the ALJ noted that Plaintiff's assertion that his young children could function independently and cook at a stove was inconsistent with the normal behavior of young children and their need for supervision. AR 45-46. The ALJ found this detracted from Plaintiff's reliability, which the ALJ was entitled to conclude. *See Smolen*, 80 F.3d at 1284.

When the ALJ presents a reasonable interpretation that is supported by substantial evidence, it is not the Court's role to second-guess it. The ALJ did not

err when discounting Plaintiff's subjective complaint testimony because the ALJ provided multiple clear and convincing reasons for doing so.

## C.   The ALJ did not Err in Framing Hypothetical Questions for the Vocational Expert

Plaintiff argues that the ALJ erred in framing his hypothetical questions for the vocational expert because the questions did not include all of Plaintiff's physical limitations as set forth by his medical providers. ECF No. 12 at 19-20.

However, the hypothetical the ALJ posed to the vocational expert was consistent with the ALJ's findings relating to Plaintiff's residual functional capacity.[7] *Compare* AR 42 *with* AR 97-98. The ALJ included all of Plaintiff's limitations, and the only omitted limitations were those that the ALJ found did not exist.

Plaintiff's argument here essentially just restates his prior arguments that the residual functional capacity did not account for all his limitations. Courts routinely reject this argument. *See Stubbs-Danielson*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *Rollins*, 261 F.3d at 857. Because the ALJ included all of the limitations that he found to exist, and because his findings are supported by substantial evidence, the ALJ did not err in omitting the other limitations that Plaintiff claims, but failed to prove. *See Rollins*, 261 F.3d at 857. Accordingly, the ALJ properly

---

[7] When determining Plaintiff's residual functional capacity, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." AR 43.

identified jobs in the national economy that existed in significant numbers and matched Plaintiff's abilities, and therefore the ALJ satisfied step five of the sequential evaluation process.

### VIII.  Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 13,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and **close the file**.

**DATED** this 25th day of March, 2019.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge